

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSEPH GIBSON,            )
                           )
          Movant,          )      10 C 1417
                           )
     v.                   )      Hon. Charles R. Norgle
                           )
UNITED STATES OF AMERICA,  )
                           )
          Respondent.   )

### OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Movant Joseph Gibson's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

### I. BACKGROUND[1]

**A. Facts**

To end his feud with a rival drug dealer, Joseph Gibson ("Gibson") in early 2006 enlisted Walter Hampton ("Hampton") to kill the rival dealer. In exchange, Gibson would give Hampton profits from his drug sales. Gibson would also provide a "clean" gun for the murder. (A "clean" gun has no serial number.) Hampton had misgivings and revealed Gibson's plan to the FBI.

Hampton helped the FBI record phone calls with Gibson. The calls captured Gibson acknowledging he had the gun for the murder and agreeing to meet Hampton to

---

[1] The court takes most of the background to this case from the Seventh Circuit's opinion on direct appeal, United States v. Gibson, 530 F.3d 606 (7th Cir. 2008). Other background details are appropriately cited.

deliver it. Hampton wore a wire to the gun meeting and recorded it. An undercover officer, Alonzo Harris ("Harris"), went along. At the meeting, a man handed Gibson a "Little Debbie" cupcake box. The grip of a gun protruded from the cupcake box. Gibson handed the "Little Debbie" box to Hampton. Hampton turned the gun over to Harris. Its serial number was filed away. Later, Hampton met Gibson at a gas station where Gibson said he would give Hampton money once the murder was done. Hampton again wore a wire and authorities captured this meeting on videotape.

The FBI arrested Gibson on January 27, 2006, shortly after the gas station meeting. Gibson waived his Miranda rights and admitted giving Hampton a gun to kill the rival drug dealer. Gibson stated that he was going to pay Hampton for the murder, but had not settled on an amount. Gibson later made a written statement describing his drug-dealing feud and admitting to complying with Hampton's request for cash in exchange for the rival dealer's murder.

## B. Procedural History

On March 23, 2006, a federal grand jury returned a four-count indictment against Gibson. It charged him with two counts of using a facility of interstate commerce (a phone) for the commission of murder for hire, in violation of 18 U.S.C. § 1958; one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); and one count of knowingly possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Gibson pleaded not guilty. The court denied his motion to suppress post-arrest statements.

A jury on March 16, 2007, convicted Gibson on all four counts. Gibson was sentenced on the first two counts to 120 months; on the third to 60 months; and on the

fourth to 55 months. The sentences were consecutive for a total of 235 months. The court denied Gibson's renewed motion for a judgment of acquittal and motion for a new trial. A Seventh Circuit panel affirmed, rejecting Gibson's challenge to the jury instructions on the murder-for-hire count; his challenge to the sufficiency of evidence as to the counts of murder-for-hire and firearm with obliterated serial number; and his challenge to the admission of post-arrest statements. The Supreme Court denied certiorari February 23, 2009. This § 2255 motion was timely filed February 16, 2010.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to move a court to vacate, set aside, or correct the sentence.[1] If the court determines that grounds exist, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under § 2255 "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In making a determination as to whether grounds for § 2255 relief exist, the court reviews the evidence and draws all reasonable inferences from it in a light most favorable to the government. Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992); Messinger v.

---

[1] "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

United States, 872 F.2d 217, 219 (7th Cir. 1989); United States v. Cosentino, 869 F.2d 301, 302 (7th Cir. 1989).

## B. Gibson's Claims under § 2255

As an initial matter, the government observes and the court agrees that Gibson's Memorandum in Support of Movant's § 2255 Motion is marbled with incoherence. Yet pleadings by pro se plaintiffs "are to be [held] to less stringent standards than formal pleading drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Gil v. Reed, 381 F.3d 649, 658 n.2 (7th Cir. 2004). The court employs "interpretive charity," Richards v. United States, No. 08 C 6810, 2009 WL 2985945, *3 (N.D. Ill. Sept. 11, 2009), because it "should be willing to construe more liberally a *pro se* litigant's claims." Byers v. Basinger, 610 F.3d 980, 986 (7th Cir. 2010).[2]

### 1. Post-Arrest Statements Improperly Admitted

Gibson asserts that "some portion, if not all of the oral or written confession, should have been excluded pursuant to 403," and he refers to his pre-trial motion to suppress. § 2255 Mot. 14. Gibson raised this issue on direct appeal. United States v. Gibson, 530 F.3d 606, 613-14 (7th Cir. 2008) (admission of statements affirmed). A § 2255 Motion is "neither a recapitulation of nor a substitute for direct appeal." McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996). "Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed

---

[2] Gibson's are not the only arguments that vex the court. The government spends a half-page of its brief touting defense counsel's reputation, arguing that "[i]n light of [defense counsel's] reputation for professional integrity and competence, the Movant's accusations are ridiculous." Gov't Resp. to Movant's Mot. Under 28 U.S.C. § 2255 Seeking to Vacate, Set Aside, or Correct Sentce ("Gov't Resp.") 11. This is the first the court has heard of the sterling-reputation-of-counsel defense to a Sixth Amendment violation. The court ignores it.

circumstances." Varela v. United States, 481 F.3d 932, 936 (7th Cir. 2007). Gibson does not identify changed circumstances. The court therefore will not reconsider it.

### 2. Ineffective Assistance of Counsel

Gibson advances several theories of counsel's failure at trial and on direct appeal. Most are essentially recapitulations of issues considered on direct appeal or constitutional issues newly raised, and so ordinarily not cognizable in a § 2255 motion. But because they are "encapsulated" in a Sixth Amendment claim, United States v. Jones, No. 09-1556, 2011 WL 873304, at *8-9 & n.6 (7th Cir. Mar. 15, 2011), the court in an abundance of caution considers each on its merits. Gibson advances four categories of Strickland claims: (1) ineffective assistance at trial; (2) ineffective assistance on direct appeal; (3) counsel's failure to help broker a plea deal; and (4) counsel's failure to object to the court's failure to consider mitigating information at sentencing.

"To succeed on such a claim, he must show both that his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced by the subpar representation." Jones, No. 09-1556, 2011 WL 873304, at *3 (citing Strickland v. Washington, 466 U.S. 668, 687-96 (1984)). "In order to establish prejudice, he must show that there is a reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different, such that the proceedings were fundamentally unfair or unreliable." Id. (citing Strickland, 466 U.S. at 687); see also Williams v. Taylor, 529 U.S. 362, 391-93 & n.17 (2000); Lockhart v. Fretwell, 506 U.S. 364, 369-72 (1993).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that

'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Gibson's counsel at trial performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Gibson must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

### a. Improper Expert Testimony and Vouching

In support of a claim of ineffective assistance at trial, Gibson contends that the prosecutor during closing argument cast government witnesses as experts and personally vouched for these witnesses. § 2255 Mot. 3. Gibson argues that because the witnesses were not qualified as experts and because a prosecutor may not endorse witness credibility, this shows the government deliberately tried to confuse and mislead the jury about firearm evidence. Id. at 3-5. Defense counsel at trial, John Meyer and Timothy O'Connor, never objected to these purported shortcomings, allegedly violating Gibson's right to effective assistance of counsel under the Sixth Amendment. Id. at 3-4. Specifically, referring to Hampton, the would-be hit man and government witness, the prosecutor told jurors: "Nobody is asking you to take him home for Thanksgiving dinner, because this is not a beauty pageant." § 2255 Mot. Ex. 5.

As to Gibson's references to expert testimony, the government appears not to have offered anything resembling expert testimony. Gibson's argument is underdeveloped and lacks specific examples either of improper testimony or counsel's missteps, and the court will not consider it. See Kerr v. Thurmer, No. 09-1032, 2011 WL

1105622, at *6 (7th Cir. Mar. 28, 2011) (citations omitted) (noting that "a party's failure adequately to develop an argument has consistently been a reason to reject claims").

As for improper vouching, the Seventh Circuit identifies two related types of improper vouching. First, a "prosecutor may not express her personal belief in the truthfulness of a witness, because that could place the prestige of the government behind the witness," and second, "a prosecutor may not imply that facts not before the jury lend a witness credibility, because that invites the jury to speculate as to the existence of facts outside the adversarial process of the trial." United States v. Anderson, 303 F.3d 847, 854-55 (7th Cir. 2002) (citations omitted). Here the prosecutor asserted Hampton would make a poor dinner guest, implying poor character. This is not offering a "personal belief in the truthfulness" of Hampton, the first form of vouching. As to the second form, the prosecutor perhaps did "imply facts not before the jury"—that Hampton would be a poor Thanksgiving guest. But those facts did not "lend a witness credibility." Although the prosecutor invited jurors to "speculate as to" what kind of holiday guest Hampton might make, the point was to illustrate how that hypothetical was irrelevant to their deliberations. It was plainly not improper witness vouching, and does not rise to the level of prosecutorial misconduct. Absent prejudice the Strickland claim fails.

Gibson also objects to the prosecutor's statement during closing: "And you can trust the words and trust the investigative techniques and the interview that Agent Darby testified about and Agent Liefer." § 2255 Mot. Ex. 8. This is not improper vouching because, as Gibson's motion acknowledges, the prosecutor told jurors to rely on Gibson's waiver and on the fact that agents "followed the book and followed the letter of the law. And that's why you can trust their statements . . . ." Id. Rather than expressing personal

7

belief or urging reliance upon external facts, see Anderson, 303 F.3d at 854-55, the prosecutor pointed to evidence discussed during trial as express grounds for witness credibility. There was nothing for defense counsel to object to, so the claim fails.

### b. Prejudicial Statements by Prosecution at Closing Argument

The next statement to which Gibson objects was the prosecutor's argument to jurors that, "You're going to have the opportunity to send a message, a message that life is precious." § 2255 Mot. Ex. 6. At trial, defense counsel immediately interjected: "I'm going to have to object about sending a message." Id. The court sustained defense counsel's objection. Id. Gibson argues that despite counsel's objection and the court sustaining it, counsel improperly failed to argue on appeal that the "send a message" remark undermined his right to a fair trial. § 2255 Mot. 7. This claim has no merit.

"As a general matter, improper comments during closing arguments rarely rise to the level of reversible error." United States v. Bowman, 353 F.3d 546, 550 (7th Cir. 2003) (citations and quotation marks omitted). The Seventh Circuit reviews comments by a prosecutor in two parts. Anderson, 303 F.3d at 854. The first is to examine the comments in isolation to determine if they were improper. Id. Second, if the comments were improper in the abstract, then if the remarks do not violate a specific trial right such as the right against self-incrimination, a court must examine the record as a whole to determine whether those comments deprived the defendant of a fair trial. Id. Here, it is clear the prosecutor's comments were improper because defense counsel objected and the court sustained, which in turn cured any prejudice. It was not a mere "objection, your honor." Counsel specifically attacked "about sending a message," the problem language Gibson now relies upon for his claim. The judge sustained, leaving no question in

8

reasonable jurors' minds that the prosecutor may not "send a message." Absent prejudice, this Strickland claim fails. Without a basis for appeal, Gibson's claim of ineffective assistance of appellate counsel under the standard set forth in Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001), cannot succeed. The court finds that any harm was instantly cured, and this issue was weaker than other issues counsel appealed and would not have resulted in a reversal or new trial.

### c. Allowing Prosecution to Confuse the Jury, Failure to Impeach, and Failure to Arrive at the Proper Jury Instructions

Gibson reframes his direct appeal of the sufficiency of evidence to sustain, and jury instructions for, the firearm convictions. Gibson argues that his counsel, among a tangled litany of other things, "allowed the prosecution to confuse the jury," failed to impeach the testimony of government agents, and failed to arrive at the correct jury instructions. § 2255 Mot. 21-27. Gibson fails to point coherently to any evidence of juror confusion or how defense counsel might have attacked agents' testimony. The issue of jury instructions was considered and affirmed on direct appeal. Gibson, 530 F.3d at 610-11. Defense counsel had nothing to object to, and therefore Gibson's claims must fail.

### d. Failure During Plea Negotiations

With respect to his Strickland claim regarding plea negotiations, Gibson makes marginally specific allegations of ineffective assistance. The Seventh Circuit recently addressed Strickland in the plea negotiation context, noting that the Supreme Court has recently granted certiorari in a case squarely on point. Kerr, No 09-1032, 2011 WL 1105622, at *11 (citations omitted). According to the Seventh Circuit, "In the plea-

bargain context, Strickland requires us to assess whether counsel performed effectively, based strictly on what was known at the time." Id. at *12 (citations omitted). The prejudice inquiry turns on "whether the deficient information was the *decisive factor* in a defendant's decision to plead guilty or to proceed to trial." Id. (emphasis added). "The certainty brought to the criminal justice system by the plea bargain make[s] strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." Id.

Gibson seems to claim his lawyer misled him as to his chances at trial and mischaracterized the evidence the government had against him. But incoherence intervenes. Gibson alleges: "Counsel advised movant that the government had no real case and that it would probably not go to trial, and movant would be released. Counsel stated that the government's video did not show movant possessing anything. (See Ex. #3, T.Tr., p.759, ln.19-21." § 2255 Mot. 32. Page 759 of the trial transcript, however, shows *the prosecution* speaking. The government's lawyer told jurors that even if Gibson didn't actually touch the gun he could still possess it. Presumably the prosecution did not also advise Gibson it had no case and would release him. Gibson's use of "counsel" haphazardly refers to his own lawyer and to the prosecutor, and it seems the drafter of the motion is not always sure who's who. The court is reluctant to sort out Gibson's argument for him. To the extent Gibson accuses *his own* counsel of misleading him as to his chances at trial, the court considers whether the accusation describes objectively unreasonable conduct based on what defense counsel knew "at the time." Kerr, No 09-1032, 2011 WL 1105622, at *12. The court looks first at performance.

Gibson has provided far too little in terms of specific allegations of counsel error, much less support for those allegations. In contrast, the Seventh Circuit ruled that a movant who supplies affidavits making specific allegations of attorney misconduct, which the government does not contest, is entitled to an evidentiary hearing. Paters v. United States, 159 F.3d 1043, 1048 (7th Cir. 1998). In Paters, defense counsel allegedly informed the movant he faced no more than five years in prison and had nothing to lose at trial. Id. at 1044. In reality he faced more than twelve years. Id. The movant took his attorney's alleged advice, went to trial, and was convicted and sentenced to 121 months. Id. The government did not contest the allegations of defense counsel's objective errors of law and math. Id. at 1045. The court took the performance prong of Strickland as established and granted a hearing on prejudice. Id. at 1048. Here, however, the government directly challenges Gibson's sketchy and unsupported claims about his counsel's allegedly improper conduct. And unlike the movant in Paters, Gibson does not allege his counsel made objective errors of law and math.

As to sentencing math, the Seventh Circuit requires that the difference between sentence and plea (or proper plea and deficient plea, as the case may be) amounts to a chance of prejudice that is "better than negligible." Julian v. Bartley, 495 F.3d 487, 500 (7th Cir. 2007). Here there is no question the difference between one decade in prison and two for Gibson is "better than negligible." But the Julian court also required a movant to provide significant support for his allegations. The court in Julian considered "a package consisting of testimonial evidence, a history of plea discussion, and the nature of the misinformation." Id. There defense counsel allegedly told the movant he faced no more than thirty years in prison if convicted. Id. at 489-90. In reality he faced up to sixty

years. Id. The movant rejected a plea deal recommending twenty-three years and was convicted and sentenced to forty years. Id. at 490. The court ordered a new trial. Id. at 500. Both Paters and Julian concerned defense counsel allegedly giving objectively wrong advice about the mathematics of sentencing.

In Gibson's case, there is no allegation of specific misinformation regarding the mathematical sentencing exposure in Gibson's case, much less a "package" to support such allegation. To the contrary, the government alleges, and Gibson does not dispute, that defense counsel went back and forth between Gibson and prosecutors to negotiate a deal that suited Gibson. Gov't Resp. 19-20. Defense counsel specifically asked the government to change the plea deal so it did not recommend the high end of the guidelines. Id. at 20. The government refused and Gibson went to trial. Gibson does not allege he did not understand his wager in terms of potential sentence. There is no discernable performance deficiency. In an abundance of caution, and because in the plea context the Strickland prongs are particularly intertwined, the court turns to an analysis of prejudice.

If defense counsel erred, to amount to prejudice that error would have to be "the decisive factor" in Gibson's decision to forgo a plea and stand trial. Gibson claims there is prejudice because "if he had a proposed plea agreement he would be entitled to the low end of the guidelines and gain two points for acceptance of responsibility and the government would not have proceeded to trial on one or more of the elements of the indictment." § 2255 Mot. 33. This is perfect hindsight, however self-serving. Cf. Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006) (districts courts should avoid denigrating evidence as "self-serving" because that it precisely what a movant must offer). The

government indeed offered to allow Gibson to plead to a lone gun charge with sentencing terms Gibson describes. Gov't Resp. 20; id. Ex. 1, at 2 (Plea Agreement). But Gibson does not say his counsel failed to communicate the terms of the plea deal. Gibson knew he was facing over twenty years if a jury convicted him or roughly half that time under the proposed plea recommendation. Nor does he say he wanted to take the deal and his counsel would not let him. He appears to claim only that he made a bad bet influenced by his counsel's advice downplaying the strength of the government's case. Gibson does not claim this alleged mischaracterization is the "decisive factor" in his decision.

Gibson nevertheless alleges that but for his lawyer's characterization of the government's case "there was a reasonable probability" he would have taken the deal. § 2255 Mot. 33. In the next sentence of his motion, Gibson claims "counsel would not consider or reconsider anything from movant." Id. This latter allegation may refer to the plea deal, but is too indeterminate to constitute an allegation of counsel's objective and prejudicial error. This is particularly so when the specifics underlying such an allegation, which would be known to Gibson, are absent. His sketchy claims do not shed light on what proved "decisive." At bottom, Gibson alleges only that his lawyer had a lousy crystal ball when it came to how a jury would react. The Julian court, in assessing a Strickland claim over a plea bargain, noted the distinction between general advice and a hard guarantee:

> In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial. It is only in this prejudice context that consideration of advice versus a guarantee warrants discussion. *The strength of an attorney's prediction—that is whether it was billed as a guarantee, advice, belief, or guess—goes toward determining whether the attorney's statements were the decisive factor in the defendant's decision to take a plea or opt for trial. Obviously a guarantee of a particular*

> *sentence might be more likely to affect a decision to take a plea or go to trial than an attorney's mere advice couched in all of the usual disclaimers that attorneys are trained to assert.*

Julian, 495 F.3d at 498 (citations omitted) (emphasis added). Gibson does not allege his plea counsel, John Murphy, gave guarantees when it came to sentencing. Gibson claims only that "Counsel advised movant that the government had no real case and that it would probably not go to trial, and movant would be released." Without more, this unsupported allegation strains credibility. If Murphy harbored this view and presented it to Gibson with the level of certainty needed to amount to prejudicial error, there would be scant reason to for Murphy to contradict his own view and broker a plea deal unless Gibson considered Murphy's view, rejected it, and ordered Murphy to seek a deal. Such a circumstance would negate prejudice altogether since the advice would have been no factor at all in Gibson's decision to take a plea. On the other hand, in the unlikely event Gibson is directly quoting or paraphrasing his lawyer, advising that a case would "probably" stop short of trial comes across as a belief, a guess, or "an attorney's mere advice couched in all of the usual disclaimers." Id.

In either scenario, Gibson fails to claim the alleged bad advice was the "decisive factor" in his decision to reject the plea. It may have been one factor, but even that is speculation based on an unsupported assertion—unlike the substantiated allegations in Paters and Julian. By contrast, it appears that a particularly important factor in Gibson's decision to stand trial was that, according to the government's uncontested assertion, Gibson may have been ready to accept the deal but for the government's refusal to sweeten it. Gov't Resp. 20 ("The government . . . indicated to the defendant that . . . was the best the government was willing to do."). Indeed, this appears to have been the actual

decisive factor. Although controlling case law deals with errors of law and math, not predictions of trial outcome, the court can envision a scenario in which the latter is a "decisive factor." This is not that case. Gibson's claims lack credibility, support, and are contradicted by the record, which includes no affidavits, even from Gibson himself. The court in sum finds no prejudice.

Without more from Gibson, on <u>Strickland</u> review the court will not second-guess a defense lawyer's tactical decisions and judgments during negotiations. This is particularly so when the plea deal counsel negotiated—and which Gibson understood—would have allowed Gibson to avoid the murder-for-hire charges altogether and plead only to a gun count, cutting his sentencing exposure in half or better. <u>See</u> Gov't Resp. 20. Gibson's <u>Strickland</u> claim in the plea context fails on both prongs.

### e. Failure to Advance Movant's Theories on Direct Appeal

Gibson insists his appellate lawyers wrongly rejected his recommendation to include additional issues in their appellate brief on his behalf. Deciding which issues to appeal is a strategic decision by counsel. "The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's trial, sentencing, and the first appeal of right." <u>Jones v. Welborn</u>, 877 F. Supp. 1214, 1219 (S.D. Ill. 1994) (citing <u>Pa. v. Finley</u>, 481 U.S. 551 (1987)). The familiar <u>Strickland</u> standard therefore applies to defense counsel's performance both at trial and on direct appeal. <u>See Lee v. Davis</u>, 328 F.3d 896, 900 (7th Cir. 2003); <u>Winters</u>, 274 F.3d at 1167. Appellate counsel's performance is objectively unreasonable "if counsel fails to appeal an issue that is both obvious and clearly stronger than the one that was raised." <u>Winters</u>, 274 F.3d at 1167. Prejudice is established where raising the stronger issue "'may have resulted in a reversal

of the conviction, or an order for a new trial.'" Id. (quoting Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996)); see also Lee, 328 F.3d at 900.

Gibson acknowledges he spoke with appellate counsel about the filing. § 2255 Mot. Ex. 25. Gibson appears to have worried about, among other things, raising issues of certain jury instructions and preserving his Strickland claim. Id. at 19. The Strickland claim was not at risk, and counsel in fact presented arguments on jury instructions, though not as many arguments as Gibson wanted. The government points out that the instructions defense counsel contested on appeal were "more novel and open to interpretation" than the "pattern instructions" regarding aiding and abetting that Gibson wanted his lawyers to raise. Gov't Resp. 19. The court agrees with the government's assessment of the jury instructions. On appeal, counsel represented to the Seventh Circuit that it had "considered (and reconsidered)" Gibson's arguments and declined to advance them. § 2255 Mot. Ex. 19, at 1 (Resp. of Counsel to Notice of Intent to Supplement). The court finds no performance failure and no prejudice under Winters.

### f. Prejudicial Slip of the Tongue: "He Agreed to Convict Himself"

Gibson's most unusual claim concerns a prosecutor's slip of the tongue during closing arguments. The government lawyer told the jury of Gibson: "He agreed to convict himself." The government denies making the remark and asserts the trial transcript reflects a typographical error. The transcript, however, is the record of proceedings, and the government offers no countervailing record. As a result, the court assesses Gibson's claim as if the phrase had been uttered.

16

The comment's context is important. The prosecutor was describing one element of 18 U.S.C. § 922(g),[3] felon in possession of a firearm. That element was whether Gibson was a previously convicted felon. This element was not actually in dispute. Gibson had agreed to an <u>Old Chief</u> stipulation, which the government was attempting to describe. The government agrees the transcript shows the prosecutor stating:

> Count Three has three elements. The first one is that prior to January 27th, 2006, the defendant had been convicted of a crime that was punishable by a term of imprisonment for more than one year.
>
> Well, that's this. The stipulation. *He agreed to convict himself.* There is no dispute in the evidence about that. You are going to get an instruction to accept that. This stipulation establishes that element.
>
> The second element: That on/or about January 27th, 2006, the defendant knowingly possess a firearm. . . .

§ 2255 Mot. 11-12 (emphasis added). As a threshold matter, a bare claim of prosecutorial misconduct would be procedurally defaulted since Gibson has not established cause and prejudice. Fashioned as a <u>Strickland</u> claim, however, the claim has life and the Court treats it as such. That is, if the prosecutor's conduct was improper and prejudicial, and defense counsel objectively failed in his professional performance to counter it, <u>Strickland</u> would provide relief.

In evaluating a claim of prosecutorial misconduct, and therefore in part whether Gibson carries his <u>Strickland</u> burden, "we must determine whether the prosecutor's remarks so infected the trial that [the defendant] was denied due process." <u>United States v. Palivos</u>, 486 F.2d 250, 256 (7th Cir. 2007) (citations and quotation marks omitted). The two steps under <u>Anderson</u> require assessing the comment first in isolation and then in

---

[3] "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (excerpted in relevant part).

the context of yielding a fair trial. 303 F.3d at 854; see also United States v. Sandoval-Gomez, 295 F.3d 757, 762 (7th Cir. 2002). As to the second step, courts consider multiple factors, including: "(1) the nature and seriousness of the prosecutorial misconduct; 2) whether the conduct of the defense counsel invited the prosecutor's remarks; 3) whether the trial court's instructions to the jury were adequate; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant." Sandoval-Gomez, 295 F.3d at 763; see also United States v. Berg, No. 09-2498, 2011 WL 1238309, at *14 (7th Cir. April 05, 2011).

The court understands Gibson to argue that when the prosecutor said, "He agreed to convict himself," the government abridged his right to a fair trial. Gibson states: "Movant assures not in any event would he agree to add another element in which movant agrees to convict himself, when movant exercised his right to trial by jury." §2255 Mot. 12. Gibson appears to be under the impression his counsel and the government conspired against him through "some understanding" unknown to him. Id. at 11. Gibson seems to think that the government's statement applied to both firearm counts against him, rather than the single element the prosecutor intended. Gibson is confused and wrong. The concern is whether the jury was likewise confused. Upon examination of the context of the remark, the court finds little chance of juror confusion.

Even if the prosecutor misstated the facts, they were not used to support any element of the crime charged at trial. They were, at most, "facts" about the procedure for a prior conviction. The fact of conviction itself was not misstated, and that fact is the one necessary to prove the element at issue. See Berg, No. 09-2498, 2011 WL 1238309, at *15 (improper remarks regarding facts "not necessary to the jury's determination of

guilt" did not hamper a fair trial). Of course it was a court, not the defendant's consent to "convict himself," that sealed Gibson's earlier conviction. The government's remark, while odd, does not appear intentionally improper. Viewed abstractly, however, it is jarringly inapt. The government does not disagree, but instead merely denies the prosecutor said it, Gov't Resp. 15, effectively conceding it was improper. In these circumstances it may satisfy the "isolation" step in Sandoval-Gomez, and the Court proceeds to step two. See Berg, No. 09-2498, 2011 WL 1238309, at *14 (where government concedes the comments are improper the court goes to step two).

The prosecutor's statement about the method of earlier conviction was, if not irrelevant, unintelligible. In terms of Sandoval-Gomez, its "nature" was accidental, its "seriousness" from all indications minimal. What matters is that Gibson had been convicted, and he voluntarily admitted guilt in the process. Gibson did not "invite" the misstatement, but the remark was not totally out of step with a guilty plea. Because of its context, the remark almost surely did not confuse jurors. The prosecutor was discussing only one element of one crime, an Old Chief stipulation for purposes of establishing the element of a felony conviction. "[T]hat's this," the prosecutor told jurors, "[t]he stipulation." Importantly, the prosecutor outlined the scope of the discussion of that element, referring to the stipulation element as "the first one" and "that element." Three short sentences after the misstatement, the prosecutor verbally flagged for the jury the next element, stating, "The second element: That on/or about January 27th, 2006, the defendant knowingly possessed a firearm…" § 2255 Mot. Ex. 14. By the structure of the prosecutor's comments, any harm from the misstatement was confined to the discussion of the first element, which the jury in any case had to accept in the Old Chief stipulation.

Moreover, a "slip of the tongue" is generally not prejudicial, even when it goes well beyond the prosecutor's comment here. Gibson in his reply to the government's response cites to Donnelly v. Christoforo, 416 U.S. 637, 637-44 (1974). On similar but more disturbing facts, Donnelly found a prosecutor's improper remarks insufficient to reverse a conviction. Id. There the prosecutor—in what was more than a slip of the tongue—told jurors: "They (the respondent and his counsel) said they hope that you find him not guilty. *I quite frankly think that they hope that you find him guilty of something a little less* than first-degree murder." Id. at 640 (emphasis added). Respondent's counsel objected, the court sustained, and the court reminded jurors that closing arguments are not evidence and that there was no evidence of the prosecutor's assertion. Id. In Gibson's case, the prosecution's error was less intentional and less prejudicial. Remarks undermine a fair trial only when, for example, a prosecutor urges and a judge permits the argument that a defendant's burden of presumption has already been surrendered during closing argument. See Mahorney v. Wallman, 917 F.2d 469, 473-74 (10th Cir. 1990) (where prosecutor told jurors, "that presumption has been removed by evidence and [defendant] is standing before you now guilty"). A slip of the tongue is not on the order of Mahorney. The prosecutor's slip here does not even rise to the level of Donnelly.

Although counsel in Donnelly objected and counsel for Gibson did not, this fact is not dispositive of performance. In this analysis, the Strickland performance prong is in step with the fourth Sandoval-Gomez factor, namely whether counsel could have and did rebut. Even if Gibson's counsel was aware of the government's misstatement and any resulting prejudice, it would have been just as strategically wise not to object. Objecting in the middle of closing would have drawn jurors' attention to the topic of, and

potentially the circumstances of, Gibson's earlier conviction—itself a prejudicial situation, which an Old Chief stipulation expressly aims to avoid. Moreover, in the final analysis the evidence fell squarely against Gibson. The jury heard from the would-be hit man, several law enforcement agents, and voice recordings of Gibson himself. Finally, jurors learned of Gibson's own incriminating post-arrest statements. Even if the odd remark was improper in a vacuum, there was no misconduct under the second step of the Sandoval-Gomez test. Given the weight of the evidence, scant if any confusion from the odd remark, and counsel's tactical wisdom in not drawing jurors' attention to Gibson's earlier conviction during closing, the Strickland claim fails.

### g. Ineffective Assistance at Sentencing

Gibson contends his lawyers objectively erred when they failed to argue for a downward departure based on his "medical, need for education and childhood." § 2255 Mot. 37. They also allegedly failed to do a reasonable investigation. Id. at 34. Defense counsel did, however, make a mitigation presentation to the court. Id. Ex. 12. Counsel also considered Gibson's theories of mitigation and, finding them specious, refused to present them. Counsel states they "reviewed each ground or possible ground for a downward departure with Mr. Gibson and informed Mr. Gibson that we could not ethically and in good faith file a motion for downward departure on the issues raised by Mr. Gibson, and because there was no legal or factual basis in our opinions for such motions." Id. Ex. 40. The court avoids "Monday-morning quarterbacking," Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990), and without more from Gibson recognizes the presumption in favor of counsel's performance under Strickland, particularly where

counsel collected letters from Gibson's friends and family and presented them along with credible mitigation arguments at sentencing. Id. Ex. 12. Gibson's claim here fails.

## III. CONCLUSION

For the foregoing reasons, Gibson's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, is denied. An evidentiary hearing is not required. See Hutchings v. United States, 618 F.3d 693, 699-700 (7th Cir. 2010) (in deciding a § 2255 motion, "the district court need not hold an evidentiary hearing 'where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief'") (quoting Torzala v. United States, 545 F.3d 517, 525 (7th Cir. 2008)). The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Date: 4-19-11